**The relief described hereinbelow is SO ORDERED.**

**SIGNED this 18th day of December, 2012.**



_____
Robert D. Berger
United States Bankruptcy Judge
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

**In re:**  Case No. 10-20388-7

**TERRY LEE CHRISTENSON and**
**CARMELLA MARTHA O'DWYER-CHRISTENSON,**
       **Debtors.**

**ERIC C. RAJALA, CHAPTER 7 TRUSTEE,**
       Plaintiff,

    v.  Adv. No. 11-06154

**US BANK,**
       Defendant.

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT**
**AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

    Plaintiff Eric C. Rajala, Chapter 7 Trustee, and defendant US Bank both seek summary

judgment in this proceeding to determine whether the debtor's return of the cash advance on

12.12.18 Rajala v US Bank SJ.wpd

February 2, 2010, is avoidable under 11 U.S.C. § 547(b). Plaintiff's motion is denied. Defendant's motion is granted. This adversary proceeding is core and the Court has jurisdiction.[1]

## Findings of Fact

The material facts are not disputed. On January 15, 2010, Carmella O'Dwyer-Christenson (Christenson or debtor) took a cash advance of $8,000 on her US Bank Visa card. The cash advance was in the form of a check written to herself. Christenson took the cash advance "out of desperation" because she could not pay all of her expenses. Christenson admitted that she "felt like it was stealing" to take the funds. She attempted to correct this lapse of judgment by returning the money to US Bank 18 days later. There is no indication Christenson used the money to pay any other creditors or for any other purpose while it was in her possession. On February 22, 2010, debtor filed her Chapter 7 bankruptcy petition. On May 18, 2011, trustee Eric C. Rajala initiated this adversary proceeding to avoid the transfer to US Bank under 11 U.S.C. § 547(b).

## Conclusions of Law

### A. Summary Judgment Standard

Summary Judgment is appropriate if the moving party demonstrates there is no genuine issue as to any material fact, and he is entitled to judgment as a matter of law.[2] Cross-motions for summary judgment allow the court to assume the only evidence to be considered has been submitted with the pleadings. However, cross-motions are to be considered independently, and

---

[1] 28 U.S.C. § 157; 28 U.S.C. § 1334.
[2] FED. R. BANKR. P. 7056.

- 2 -
12.12.18 Rajala v US Bank SJ.wpd

Case 11-06154    Doc# 25    Filed 12/18/12    Page 2 of 13

summary judgment is not appropriate if disputes remain as to any material fact.[3] Summary judgment is designed to secure the just, speedy, and inexpensive determination of an action.[4]

**B.      Preferential Transfer**

Prepetition payments are avoidable as preferential transfers under 11 U.S.C. § 547(b) if: (1) they are of an interest of the debtor in property; (2) they are to or for the benefit of a creditor; (3) they are made for or on account of an antecedent debt owed by the debtor before such transfer was made; (4) they are made while the debtor was insolvent; (5) they are made on or within 90 days before the date of the filing of the petition; and (6) they allow such creditor to receive more than such creditor would otherwise receive in a chapter 7 liquidation proceeding.[5] The trustee bears the burden of proving the avoidability of a transfer under § 547(b).[6] If the trustee succeeds, he may recover the transferred property for the benefit of the estate.[7]

The only issue in this case is whether the transfer was of an interest of the debtor in property. The Bankruptcy Code does not define "an interest of the debtor in property."[8] Several cases define property of the debtor as property that would have been part of the estate had it not been transferred before the commencement of the bankruptcy proceedings.[9] Property of the estate, defined in § 541(a)(1), includes "all legal or equitable interests of the debtor in property

---

[3] *Atlantic Richfield Co. v. Farm Credit Bank of Wichita,* 226 F.3d 1138, 1148 (10th Cir. 2000).
[4] *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).
[5] *Brown v. Kitchenmaster, et al. (In re Hertzler Halstead Hosp.)*, 334 B.R. 276, 286 (Bankr. D. Kan. 2005).
[6] 11 U.S.C. § 547(g).
[7] 11 U.S.C. § 550(a).
[8] *Begier v. I.R.S.*, 496 U.S. 53, 58 (1990).
[9] *Id.*; *Mitsui Mfrs. Bank v. Unicom Computer Corp.*, 13 F.3d 321, 324 (9th Cir. 1994); *Parks v. FIA Card Services, N.A. (In re Marshall)*, 550 F.3d 1251, 1255 (10th Cir. 2008).

- 3 -

12.12.18 Rajala v US Bank SJ.wpd

Case 11-06154    Doc# 25    Filed 12/18/12    Page 3 of 13

as of the commencement of the case."[10]  Property interests are created and defined by state law.[11]  Property held in trust for another is not property of the estate for purposes of § 547(b).[12]  Bankruptcy courts are courts of equity and may impose equitable remedies.[13]

Here, the debtor withdrew the cash advance, misrepresenting to US Bank that she would pay them back.  However, instead of using the money to pay her other creditors, debtor chose to do the equitable thing by returning the money to US Bank.  Plaintiff contends that under *In re Marshall*[14] this cash advance became property of the estate once the debtor exercised control over the funds.

In *Marshall*, the 10th Circuit Court of Appeals held that when a debtor transfers money from one credit card to another, and elements (2) through (6) of § 547(b) are met, then the first element is also satisfied and the transfer is avoidable.[15]  In *Marshall*, the debtors did not place the funds in their personal account but rather directed one credit card company to pay the balance owed to another credit card company.[16]  In common parlance, the payment was a balance transfer.  The *Marshall* court found that the funds existed within the bankruptcy estate for an instant of time and therefore fell under the reach of § 547(b).  The court in *Marshall* relied on the "dominion/control test" to determine whether funds borrowed from one creditor to pay another are property of the estate.  The court stated that the majority view holds that "when a debtor

---

[10] 11 U.S.C. § 541(a)(1).
[11] *Bailey v. Big Sky Motors, Ltd. (In re Ogden)*, 314 F.3d 1190, 1197 (10th Cir. 2002).
[12] *Begier*, 496 U.S. at 59; *see also* RESTATEMENT (FIRST) OF RESTITUTION § 160 cmt. e (1937) (where a person holds property upon a constructive trust for another, the latter has the beneficial interest therein).
[13] *Young v. United States (In re Young)*, 535 U.S. 43, 50 (2002) (Scalia, J., stating that bankruptcy courts "are courts of equity and 'appl[y] the principles and rules of equity jurisprudence.'") (quoting *Pepper v. Litton*, 308 U.S. 295, 304 (1939)).
[14] 550 F.3d 1251, 1255.
[15] *Id.* at 1256.
[16] *Id.* at 1253.

converts an offer of credit into loan proceeds and uses those proceeds to pay another creditor, the debtor deprives the bankruptcy estate of those proceeds."[17]

**C.      Constructive Trust**

The case *sub judice* is distinguishable from *In re Marshall* because the debtor returned the funds to US Bank and did not use them to pay other creditors.  If debtor had used the cash advance to pay other debt, the transfer would be avoidable under § 547(b) and *Marshall*.  Here, the debtor borrowed the funds without any intent to pay them back, but instead of using the money for her own benefit, she quickly realized the wrongful nature of her actions and returned the money.  In these unique and limited circumstances, the Court determines that the debtor never acquired an equitable interest in the funds.[18]

In *Leitner*,[19] the debtor embezzled from his employer approximately $1 million.  A portion of these funds was used to purchase the debtor's residence, which at the time of the decision, would have been fully exempt under Kansas law.  Judge Flannagan imposed a constructive trust on the debtor's residence in favor of the beneficiary.  The beneficiary of a constructive trust is the owner of the equitable interest as well as the injured party, and in the *Leitner* case, the beneficiary was debtor's former employer from whom debtor embezzled $1 million.  The constructive trust trustee (debtor) held only a bare legal title to the property that was in the trust, and it was only this bare legal title that entered the bankruptcy estate.  Judge Flannagan observed that a debtor holds this bare legal title subject to a duty to convey the

---

[17] *Id.* at 1256 (citing *Meoli v. MBNA America Bank, N.A.* (*In re Wells*), 382 B.R. 355, 360 (B.A.P. 6th Cir. 2008); *Yoppolo v. Greenwood Trust Co.* (*In re Spitler*), 213 B.R. 995, 999 (Bankr. N.D. Ohio 1997)).

[18] At most, debtor held bare legal title to the funds as the constructive trust trustee; regardless, the funds were not an asset of the debtor's estate, even for a nanosecond.  *Marshall*, 550 F.3d at 1258 n.6.

[19] *Clark v. Wetherill (In re Leitner)*, 236 B.R. 420, 425 (Bankr. D. Kan. 1999).

property to the beneficiary, who holds the equitable interest in the property. The equitable interest of the owner does not become property of the bankruptcy estate. A constructive trust comes into existence as of the inception of the transaction or wrongful conduct.[20] Judge Flannagan went on to hold that since the debtor held only bare legal title to the residence, the trustee's claim for a preferential transfer under § 547(b) must fail "because neither the trust nor the attachment were a 'transfer of an interest of the debtor in property.'"[21] Although in *Leitner* the debtor held the property of the trust on the bankruptcy petition date, the facts giving rise to the imposition of a constructive trust on the debtor's residence had occurred prior to the filing of the bankruptcy. In *Leitner*, the property of the trust (the residence) was sold after the filing of Leitner's bankruptcy. In the case *sub judice*, all of the events, including return of the property of the constructive trust to US Bank (the beneficiary), occurred prior to the filing of the bankruptcy. Just as Judge Flannagan ultimately found that he could impose a constructive trust when the events straddle the filing of the bankruptcy, this Court finds that it may impose or find a constructive trust when all of the transactions were complete prior to the filing of the bankruptcy.

   A person who holds property in trust for another does not have an equitable interest in the property.[22] "Trusts are classified with respect to the manner of their origin."[23] Property procured by fraud may be treated as being held in constructive trust and excluded from the bankruptcy estate.[24] Determination of whether a constructive trust exists is fact sensitive. The existence of a constructive trust may be determined by the bankruptcy court even absent a prepetition

---

[20] *Id.*

[21] *Id.* at 426 (footnote collecting cases omitted).

[22] *Begier*, 496 U.S. at 59.

[23] *See* GEORGE BOGERT, BOGERT'S TRUST AND TRUSTEES § 1, at 11 (2d ed. 1984).

[24] *See Canal Corp. v. Finnman, et al. (In re Johnson)*, 960 F.2d 396 (4th Cir. 1992).

- 6 -

12.12.18 Rajala v US Bank SJ.wpd

adjudication. A debtor who procures property subject to a constructive trust has a duty to repay the debt in order to avoid unjust enrichment.[25] Whether property is held in trust is determined by applicable state law.[26] In Kansas, a constructive trust may arise when "a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it . . . ."[27] Unjust enrichment arises when (1) a benefit has been conferred upon a person; (2) that person retains the benefit; and (3) under the circumstances, the retention of the benefit is unjust.[28]

A constructive trust can be imposed in cases where "a person by fraud, actual or constructive, *or by any form of unconscionable conduct*, or questionable ethics has obtained or holds title to property which in equity and good conscience he ought not to possess or which justly belongs to another."[29] For example, a constructive trust can arise as a remedy for "fraud, misrepresentation, duress, undue influence or mistake of such a character that the transferor is entitled to restitution."[30] Fraud is not necessary for the imposition of a constructive trust.[31] A constructive trust is effective from the "inception of the transaction," or in other words, it relates back to the occurrence of the misconduct that caused it.[32]

A constructive trust requires specific property "on which the constructive trust can be

---

[25] *See* 1 HENRY J. SOMMER, ET AL., CONSUMER BANKRUPTCY LAW AND PRACTICE § 18.5.2.2. at n.159 (9th ed. 2009 & Supp. 2010). "State courts' prepetition imposition of constructive trusts is not a transfer that can be avoided as a preference," citing *In re Pitchford*, 410 B.R. 416 (Bankr. W.D. Penn. 2009).

[26] 5 COLLIER ON BANKRUPTCY ¶ 547.03[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2012).

[27] *Nelson v. Nelson*, 288 Kan. 570, 580 (2009) (emphasis omitted), (quoting RESTATEMENT (FIRST) OF RESTITUTION §160).

[28] *See id.*

[29] *Id*. at 585 (emphasis added by Luckert, J.) (quoting *In re Estate of Zimmerman*, 207 Kan. 354, 357 (1971)).

[30] *Id.* (quoting *Horsley v. Hrenchir*, 146 Kan. 767, 769 (1937)).

[31] *Id*.

[32] *Leitner*, 236 B.R. at 425.

- 7 -

fastened, and such property is held by the person to be charged as constructive trustee."[33] "[A] constructive trust is essentially a tracing remedy, allowing recovery of the specific asset or assets taken from the plaintiff, any property substituted for it, and any gain in its value."[34] Once the elements for a constructive trust are found, the remedy may not be imposed without determining whether the specific property returned by debtor was the property that she held in trust. Since it is undisputed in this case that the *cash advance was returned quickly, not repaid or paid to a third party, and was only in debtor's possession for a short time,* the Court finds that this requirement is satisfied.

The only issue remaining is whether, under these unique circumstances, a constructive trust existed such that US Bank retained its equitable interest in the funds. The Court finds that a constructive trust arose at the time of the cash advance and, consequently, the equitable interest in the funds never transferred to debtor.

The debtor misrepresented her intentions to US Bank. When debtor wrote the US Bank check to herself, she did not intend to repay the debt. Her initial intentions were to use the money for her own gain by paying other creditors and then declaring bankruptcy. Under these facts, the elements of unjust enrichment are satisfied. First, debtor obtained the benefit of the funds. Second, she retained the benefit for nearly three weeks. Third, under these circumstances, and according to her own conscience, the retention of the benefit was unjust. The retention of the benefit was unjust because she did not intend to return the funds and presumably thought that the debt would be discharged in bankruptcy. Because the elements of unjust

---

[33] RESTATEMENT (FIRST) OF RESTITUTION § 160 cmt. i (1937).
[34] *Nelson*, 288 Kan. at 580 (citation omitted).

- 8 -
12.12.18 Rajala v US Bank SJ.wpd

Case 11-06154   Doc# 25   Filed 12/18/12   Page 8 of 13

enrichment are satisfied, the Court finds that equity imposed a constructive trust on the funds originating from the time debtor wrote the check to herself and continuing until the money was repaid. Other facts establish a constructive trust. The debtor engaged in wrongful conduct by procuring the cash advance from US Bank to whom she did not intend to repay the debt. It can be argued with some vigor that debtor engaged in fraud when she first procured the cash advance, and there is a statutory presumption of fraud in the Bankruptcy Code. A finding of a constructive trust is also supported by the manner in which debtor incurred the debt to US Bank when she wrote a check to herself for deposit without a concurrent intent to repay the debt; since the debtor filed bankruptcy only 40 days after the initial cash advance, it may be safely presumed that she also did not possess the independent financial means to repay the debt. The debtor was subject to the equitable duty to convey the $8,000 cash advance back to US Bank, a duty upon which she acted 18 days later when she returned the cash advance to US Bank. The facts of this case lead to one conclusion: that a constructive trust arose prepetition and the debtor was the trustee holding bare legal title to $8,000, property which she had a duty to convey to US Bank as the beneficiary of the constructive trust. As a result of the constructive trust, debtor never acquired an equitable interest in the property and therefore the cash advance never became property of the estate under § 541. Tracing the funds in this case is not an issue. The debtor received $8,000 from US Bank and within three weeks transferred this sum back to US Bank. This repayment was after deposit of the $8,000 into debtor's account, and the debtor's ability to repay the $8,000 shortly thereafter sufficiently establishes tracing of the funds from US Bank to the debtor and the transfer of said funds to US Bank.

**D. Policy**

This outcome not only conforms with the Bankruptcy Code and the law in Kansas, it also best serves the underpinnings of the Bankruptcy Code. A central purpose of the Code is "to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.'"[35] This "fresh start" policy of the Bankruptcy Code is limited, however, to "the honest but unfortunate debtor."[36]

With this policy in mind, a review of §§ 547(b) and 523(a)(2)(C)(i)(II) demonstrates that the Code does not support a finding for the trustee. The purposes of § 547(b) are "to discourage actions by creditors that might prematurely compel the filing of a petition and to secure an equal distribution of assets among creditors of like class."[37] Neither of these goals are hindered by this Court's conclusion. First, this decision will not encourage actions by creditors that might prematurely compel the filing of a petition. Second, the concept of a constructive trust "is not inherently incompatible with the fair treatment of creditors in bankruptcy."[38] A constructive trust comes into existence at the time of the transaction and therefore "[t]he beneficiary's equitable interest does not become property of the estate."[39] This sentiment follows the idea stated by Justice Black in a case under the 1898 Bankruptcy Act: "The Bankruptcy Act simply

---

[35] *Grogan v. Garner*, 498 U.S. 279, 286 (1991) (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934)).
[36] *Id.*
[37] *Gillman v. Scientific Research Prods. Inc. of Del. (In re Mama D'Angelo, Inc.)*, 55 F.3d 552, 554 (10th Cir. 1995).
[38] *In re Leitner*, 236 B.R. at 423.
[39] *Id.* at 424.

- 10 -

12.12.18 Rajala v US Bank SJ.wpd

Case 11-06154   Doc# 25   Filed 12/18/12   Page 10 of 13

does not authorize a trustee to distribute other people's property among a bankrupt's creditors."[40] Debtor did not use the borrowed money and later repay US Bank with other property prior to her other creditors; she returned the money that she procured in order to correct her wrongful conduct. Because debtor did not intend to repay US Bank at the time she took the cash advance, she had a duty to return the money, which she fulfilled.

Section 523(a)(2)(C)(i)(II) of the Code is intended to prevent dishonest consumer debtors from receiving the benefit of a discharge in bankruptcy for a particular category of debt.[41] It does so by creating a presumption of fraud when a cash advance is withdrawn within 70 days of the filing of the petition. This provision hopefully dissuades consumer debtors from "loading up" on debt in anticipation of bankruptcy.[42] Congress was concerned that, absent this provision, debtors would incur excessive debt within a short period prior to the filing of the petition and not only would this "result in direct losses for the creditors that are the victims of the spree, but it also creates a higher absolute level of debt so that all creditors receive less in liquidation. During this period of insolvency preceding the filing of the petition, creditors would not extend credit if they knew the true facts."[43] In the case *sub judice*, the debtor is a consumer and the cash advance is a consumer debt as contemplated by this exception to discharge. This statutory presumption of fraud is further indicia that this Court should impose a constructive trust on the funds borrowed from defendant. In addition, Judge Flannagan's decision *In re Leitner*[44] supports

---

[40] *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 135-36 (1962), quoted in *Leitner* at 425 n.13.
[41] *See, generally, Cohen v. de La Cruz*, 523 U.S. 213, 217-18 (1998).
[42] *Bank One Columbus, N.A., v. Schad (In re Kountry Korner Store)*, 221 B.R. 265, 271 (Bankr. N.D. Okla. 1998) (citing S. REP. NO. 98-65, at 9 (1983)).
[43] S. REP. NO. 98-65, at 9 (1983).
[44] 236 B.R. 420 (Bankr. D. Kan. 1999, Flannagan, J.).

the notion that if the debtor "obtains property by fraud or other improper means, a court can impose a constructive trust to protect the injured party."[45]  Continuing, Judge Flannagan explains that a constructive trust is "a legal fiction that adopts the analogy of a trust and declares that a beneficiary owns an equitable interest in property. The constructive trust imposes a duty on the trustee to hold the equitable property interest in trust for its owner, the beneficiary."[46]  The beneficiary of the trust is US Bank, the injured party.  The property held by the debtor in a constructive trust is held in trust for its owner (the injured party).

A finding for the trustee in this case does not serve the goals of § 523.  Exceptions to discharge reflect public policy.  If the trustee prevails, it would bring the debt and the funds into the estate, essentially causing the "loading up" that the Bankruptcy Code discourages.  By bringing the cash advance into the estate, the trustee would increase the total debt and only provide a small increase in payments to the other creditors.  Furthermore, this slight benefit to the creditors would come at a cost.  A finding for the trustee could punish the debtor by making the $8,000, from which she never benefitted, nondischargeable.  This result prevents Christenson, the "honest but unfortunate debtor" who corrected her prepetition misjudgment, from obtaining a "fresh start" upon completion of her bankruptcy.  Despite the initial cash advance, this debtor subsequently acted ethically and morally by repaying the funds.

The outcome urged by the trustee does not fit the central goal of the Bankruptcy Code or the policy embodied therein.  There is no question that debtor acted wrongfully by withdrawing the cash advance.  However, there is also no question that the moral and ethical act was to return

---

[45] *Id.* at 424.
[46] *Id.*

- 12 -

12.12.18 Rajala v US Bank SJ.wpd

the money, which she did. This is not an action by a debtor that this Court wishes to discourage.

**E.      Conclusion**

For the reasons stated above, the Court finds for the defendant and holds that the return of the cash advance is not avoidable under § 547(b) because the debtor never obtained an equitable interest in the funds. Debtor did not transfer property of the estate to US Bank. The recognition by this Court that the US Bank monies were held in constructive trust is limited to the narrow facts of the case *sub judice* and will seldom apply to other avoidance or recovery actions. The policy considerations only augment and do not stand alone as a basis for this Court's holding.

It is therefore ordered that defendant's Cross Motion for Summary Judgment is granted and that plaintiff's Motion for Summary Judgment is denied and judgment will issue in defendant's favor on plaintiff's Complaint.

It is further ordered that the foregoing constitutes findings of fact and conclusions of law under Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52(a) of the Federal Rules of Civil Procedure. A separate judgment based on this ruling will be entered on a separate document as required by Fed. R. Bankr. P. 9021 and Fed. R. Civ. P. 58.

IT IS SO ORDERED.

###

ROBERT D. BERGER
U.S. BANKRUPTCY JUDGE
DISTRICT OF KANSAS